United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

ALD SOCIAL, LLC,

         Plaintiff,

    v.

VERKADA, INC.,

         Defendant.

Case No.  23-cv-00049-JSC

**ORDER RE: MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

Re: Dkt. No. 12

      ALD Social sues Verkada for infringement of two patents directed to systems to detect crowd safety risks and to alert emergency personnel of that risk: U.S. Patent Nos. 9,198,054 ("the '054 patent") and 9,402,158 ("the '158 patent").  (Dkt. No. 1.)[1] Verkada's motion to dismiss for failure to state a claim is now pending before the Court.  (Dkt. No. 12.)  Having carefully reviewed the parties' briefing and with the benefit of oral argument on February 2, 2023, the Court GRANTS the motion to dismiss with leave to amend.  In light of the claim chart Plaintiff attached to its complaint, its infringement claims are not plausible.

**BACKGROUND**

**A. ALD Social's Patents**

      Plaintiff filed a patent infringement suit against Verkada for infringement in the Western District of Texas.  (Dkt. No. 1.)  Both the '054 patent and the '158 patent ("Asserted Patents") are entitled "Aggregate Location Dynometer (ALD)."  (Dkt. No. 1 at 4.) The '158 patent is a continuation of the '054 patent.  '158 patent, col. 1 ll. 4-13.  Both Asserted Patents' abstracts describe:

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

An Aggregate Location Dynometer (ALD) in a physical wireless network alerts to a problematic crowd risk using location based services (LBS). An Aggregate Location Dynometer (ALD) comprises a Network Monitor, a Crowd Risk Determinant and an Alert Module. The Network Monitor monitors wireless traffic for a potential viral event, associated with a formation of a plurality of wireless devices. The Crowd Risk Determinant requests location information associated with a plurality of wireless devices in a given area regarding a respective viral event. The Crowd Risk Determinant determines if the viral event also indicates a crowd safety risk, based on the shape and movement of observed wireless devices. The Alert Module triggers an alert of an impending crowd problem when crowd risk is above a given threshold. Historical databases are empirically determined and maintained in the Aggregate Location Dynometer (ALD) for use in viral event and crowd risk assessment.

'054 patent, abstract; '158 patent, abstract.  The Asserted Patents elaborate on the significance of wireless devices:

The Aggregate Location Dynometer (ALD) analyzes a bird's-eye view of people formation, presuming those individuals possess respective handheld wireless devices that permit collection of current location information, whether that current location information be obtained from the wireless devices themselves, and/or from a network-based location server.

'054 patent, col. 2 ll. 57-63; '158 patent, col. 2 ll. 61-67.

At a high level, the invention is a system to track the geographic location of wireless devices and determine whether a particular geographic region represents a "crowd related public safety risk."  '054 patent, col. 2 ll. 45–col. 3 ll. 26; '158 patent, col. 2 ll. 51–col. 3 ll. 30.  One such risk is a potential viral outbreak when the system detects, *e.g.*, too many wireless devices in one geographical area.  *Id.*  More specifically, claim 1 of the '054 patent states:

1. An aggregate location dynometer in a physical wireless network server, said aggregate location dynometer comprising:

a network monitor to monitor a wireless network for an indication of a viral event;

a location aggregator to obtain a location of each of a plurality of wireless devices associated with said viral event;

a crowd risk determinant, triggered by said network monitor, to determine a crowd risk based on an aggregation of said location of each of said plurality of wireless devices associated with said viral event; and

2

an alert module to initiate an alert message relating to a public safety risk determined from an analysis of said viral event.

'054 patent, col. 9 ll. 10-24.  Claim 1 of the '158 patent states:

> 1. An aggregate location dynometer in a physical wireless network server, said aggregate location dynometer comprising:
>
> a network monitor to monitor a wireless network for an indication of a potential viral event indicated by an aggregation of current locations of a plurality of physical wireless devices associated with said potential viral event; and
>
> a crowd risk determinant to assess said aggregation of said current locations of said plurality of physical wireless devices pertaining to said potential viral event triggered by said network monitor.

'158 patent, col. 9 ll. 18-29.

### B. Complaint Allegations

Plaintiff alleges Verkada's Crowd Notifications system (the "Accused Product") directly infringes, literally and/or under the doctrine of equivalents, at least claim 1 of both the '054 and '158 patents.  (Dkt. No. 1 at 5-6.)  Plaintiff further alleges Verkada induces infringement.  (Dkt. No. 1 at 4.)[2]  Plaintiff's complaint attaches claim charts for each patent.  (Dkt. No. 1-1 at 35-48.)

### C. The Accused Product

Verkada's product is a "camera system to monitor for cases of overcrowding."  (Dkt. No. 1-1 at 36, 44.) The system uses "edge-based people detection capabilities" to identify overcrowding.  (Dkt. No. 1-1 at 37, 45.) For example, Plaintiff's claim chart offers the following illustration of the Accused Product:

---

[2] The Complaint states: "Defendant has committed or induced acts of infringement…" but pleads no facts supporting the allegation.  (Dkt. No. 1 at 4.) Verkada raises this issue in their motion to dismiss.  (Dkt. No. 12 at 14-15.) Plaintiff's response does not address inducement.  (Dkt. No. 17.)

United States District Court
Northern District of California



(Dkt. No. 1-1 at 39, 47.) This image shows the Accused Product's detection of people "in a single frame."  (Dkt. No. 1-1 at 39, 47.) Users can "[b]e alerted when cameras detect a number of people in-frame that exceeds a pre-set threshold."  (Dkt. No. 1-1 at 40, 48.) The alert includes "a notification via email or SMS with an image and a link to review the associated footage."  (Dkt. No. 1-1 at 38, 45.) "Users" are "Site Admins" or others who want to "track activity through the facility… or alert local staff to take action."  (Dkt. No. 1-1 at 40-41, 45.)

   **D. Procedural Background**

   While the matter was pending in the Western District of Texas, Verkada filed a motion to dismiss the Complaint.  (Dkt. No. 12.) The case was then transferred to this Court.  (Dkt. Nos. 23, 24.) Verkada's motion to dismiss the Complaint is now pending.  (Dkt. Nos. 12, 17, 18.)

LEGAL STANDARD

   A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  To meet this requirement, the complaint must provide "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "Determining whether a complaint states a plausible claim for relief is 'a context-specific task that requires the reviewing court to draw on its judicial

1    experience and common sense.'" *Ebner v. Fresh, Inc.*, 838 F.3d 958, 963 (9th Cir. 2016) (citation

2    omitted).[3]  For purposes of a Rule 12(b)(6) motion, courts "accept factual allegations in the

3    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

4    *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  But, "only

5    pleaded facts, as opposed to legal conclusions, are entitled to assumption of the truth."  *United*

6    *States v. Corinthian Colls.*, 655 F.3d 984, 991 (9th Cir. 2011).  Courts may also review

7    "documents attached to the complaint" at the 12(b)(6) stage.  *United States v. Ritchie*, 342 F.3d

8    903, 908 (9th Cir. 2003).

9        An "element-by-element pleading standard for patent infringement . . . is unsupported and

10   goes beyond the standard the Supreme Court articulated in *Iqbal* and *Twombly*."  *Bot M8 LLC v.*

11   *Sony Corp. of Am.*, 4 F.4th 1342, 1352 (Fed. Cir. 2021).  Rather, "[t]he adequacy of the facts pled

12   depends on the breadth and complexity of both the asserted patent and the accused product or

13   system and on the nature of the defendant's business activities."  *K-Tech Telecomms., Inc. v. Time*

14   *Warner Cable, Inc.*, 714 F.3d 1277, 1286 (Fed. Cir. 2013).  For a "simple technology," a plaintiff

15   may plausibly plead by providing the asserted patents, identifying the accused products "by name

16   and by attaching photos of the product packaging," and alleging that the accused products meet

17   "each and every element of at least one claim… either literally or equivalently."  *Disc Disease*

18   *Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1260 (Fed. Cir. 2018).

19       But, even when a complaint provides sufficient factual statements, a plaintiff may still fail

20   to plausibly state a claim where (1) the infringement allegation rests on an implausible claim

21   construction, *Ottah v. Fiat Chrysler*, 884 F.3d 1135, 1141-42 (Fed. Cir. 2018), or (2) "the factual

22   allegations are actually *inconsistent* with and contradict infringement." *Bot M8 LLC*, 4 F.4th at

23   1354.  Both bases for dismissal apply here.  Because the Complaint requires either implausible

---

[3] The law of the regional circuit governs "procedural issues, including the grant of a motion to dismiss."  *Disc Disease Sols. Inc. v. VGH Sols., Inc.*, 888 F.3d 1256, 1259 (Fed. Cir. 2018). Federal Circuit law governs issues "unique to patent law."  *Woods v. DeAngelo Marine Exhaust, Inc.*, 692 F.3d 1272, 1279 (Fed. Cir. 2012) (quotation marks and citation omitted). Here, the Ninth Circuit's pleading plausibility precedent governs.  *See, e.g., Bot M8 LLC v. Sony Corp. of Am.*, 4 F.4th 1342, 1351-52 (Fed. Cir. 2021).

claim construction or makes allegations inconsistent with infringement, the Court grants Verkada's motion to dismiss.

## DISCUSSION

## I.    Direct Infringement

A party who "makes, uses, offers to sell, or sells" a patented invention "without authority" directly infringes a patent.  35 U.S.C. § 271(a).  Direct infringement requires the accused product to literally infringe or infringe under the doctrine of equivalents.  *Ottah v. Bracewell LLP*, No. 2022-1876, 2022 WL 16754378, at *2 (Fed. Cir. Nov. 8, 2022).  Verkada argues Plaintiff fails to plausibly state a claim for infringement under either liability theory.  The Court agrees.

### A.    Plaintiff Pleads an Implausible Claim Construction or Facts Inconsistent with Literal Infringement.

"A finding of literal patent infringement 'requires that each and every limitation set forth in a claim appear in an accused product.'"  *Bracewell LLP*, 2022 WL 16754378, at *2 (quoting *V-Formation, Inc. v. Benetton Grp. SpA*, 401 F.3d 1307, 1312 (Fed. Cir. 2005)).  Plaintiff's claim charts[4] provide two possible constructions of "wireless devices": "people" or a "camera system." (Dkt. No. 1-1 at 38-39 ("Crowd Notifications deliver real-time alerts when more than a specified number of people are detected in frame."), 46-47 (same), 38 ("Verkada's Crowd Notifications allow users to track activity of the crowd through the facility by using the camera system."), 44 ("Verkada's Crowd Notifications utilize the camera system to monitor for cases of overcrowding.").)  The first construction— "people" as "wireless devices"—is implausible.  The latter construction— "cameras" as "wireless devices"—fails because it is inconsistent with infringement.

### 1.    Implausible Claim Construction

Claim construction is generally not proper at the 12(b)(6) stage.  *See Nalco Co. v. Chem-Mod, LLC*, 883 F.3d 1337, 1350 (Fed. Cir. 2018); *see also Fujitsu Ltd. v. Belkin Int'l, Inc.*, 782 F. Supp. 2d 868, 890 (N.D. Cal. 2011) (explaining that a "motion to dismiss is not the proper time to

---

[4] The Court may consider Plaintiff's claim charts because Plaintiff attached them to the complaint. *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

6

1    initiate claim construction"). But, the Court may dismiss a complaint prior to claim construction

2    when the complaint rests on an implausible claim construction. *See Fiat Chrysler*, 884 F.3d at

3    1141-42; *see also Nalco Co.*, 883 F.3d at 1349 (explaining the patent infringement plaintiff must

4    plead sufficient facts "to raise a reasonable expectation that discovery will reveal evidence" to

5    support the plaintiff's allegations) (quoting *Twombly*, 550 U.S. at 556).

6           In *Fiat Chrysler*, for example, the Federal Circuit affirmed dismissal at the pleading stage

7    because a "book holder" could not "plausibly be construed to include or be the equivalent of a

8    camera holder, in view of the specification and the prosecution history." *Fiat Chrysler*, 884 F.3d

9    at 1141-42; *see also Bracewell LLP*, 2022 WL 16754378, at *3 (affirming dismissal at pleading

10   stage because "'a book holder,'… by its plain language, does not cover a camera mounting

11   system"). The allegations of this case are analogous. Plaintiff alleges Verkada's Accused Product

12   uses a camera to detect a "number of people." (Dkt. No. 1-1 at 38-39 ("Crowd Notifications

13   deliver real-time alerts when more than a specified number of people are detected in frame."), 46-

14   47 (same).) But, the patents claim a system to "determine a crowd risk based on an aggregation of

15   said location of each of said plurality of **wireless devices** associated with said viral event" and

16   "assess said aggregation of said current locations of said plurality of physical **wireless devices**

17   pertaining to said potential viral event." '054 claim 1; '158 claim 1 (emphasis added). The

18   specification explains "wireless devices… permit collection of current location information" of

19   people. '054 patent, col. 2 ll. 57-63; '158 patent, col. 2 ll. 61-67. Just as claims to a device

20   configured to hold books cannot plausibly cover a device configured to hold a camera, *see Fiat

21   Chrysler*, 884 F.3d at 1141-42, claims to a system which determines crowd risk based on tracking

22   a "plurality of wireless devices" cannot cover a system which determines crowd risk based on

23   image analysis of human beings. (Dkt. No. 1-1 at 38-39, 44-45.) Put differently, the Accused

24   Product "counts the number of *people* in a single frame—not wireless devices." (Dkt. No. 12 at

25   9.) So, Plaintiff's implausible construction—construing people as wireless devices—fails to state

26   a claim for literal infringement. *See Fiat Chrysler*, 884 F.3d at 1141-42.

27   //

28   //

United States District Court
Northern District of California

United States District Court
Northern District of California

### 2.    Pleading Inconsistent with Infringement

Plaintiff alleges Verkada's "camera system" could satisfy the "wireless devices" claim element. (Dkt. No. 1-1 at 38 ("Verkada's Crowd Notifications allow users to track activity of the crowd through the facility by using the camera system."), 44 ("Verkada's Crowd Notifications utilize the camera system to monitor for cases of overcrowding.").)[5]  Even assuming this construction is plausible, Plaintiff fails to plausibly plead infringement because the claim charts allege facts inconsistent with infringement.  *See Bot M8 LLC*, 4 F.4th at 1354.

In *Bot M8 LLC*, the complaint alleged the accused device included an authentication program located on the PlayStation 4 motherboard. *Id.*  But, the asserted claim required the authentication program to be stored in memory separate from motherboard memory. *Id.*  Because a program could not be stored both on the motherboard and in a different memory location, the plaintiff "pleaded itself out of court" by making an allegation "inconsistent with" infringement. *Id.*

The same principle applies here.  Assuming a "camera system" is a "wireless device," the claims require determination of a crowd risk based on "an **aggregation** of said location of each of said **plurality** of wireless devices [(*i.e.*, camera system)]" or an "**aggregation** of said current locations of said **plurality** of physical wireless devices [(*i.e.*, camera system)]."  '054 patent, claim 1; '158 patent, claim 1 (emphasis added).  Plaintiff's own claim charts attached to the complaint allege Verkada's camera system locates a **plurality** of **people**. (Dkt. 1-1 at 38-39, 46-48.) These allegations are inconsistent with infringement because Plaintiff does not (and indeed, cannot) allege Verkada's camera system locates a **plurality** of **camera systems**. *See Bot M8 LLC*, 4 F.4th at 1354; *see also Mosaic Brands, Inc. v. The Ridge Wallet LLC*, No. 22-CV-04556 AB-JCx, 2020 WL 5640233, at *4-5 (C.D. Cal. Sept. 3, 2020) (dismissing infringement claims as implausible for, among other reasons, pleading the same product feature satisfied multiple, distinctive claim elements).

---

[5] Verkada argues Plaintiff failed to plead the "camera" theory for the relevant elements in the Complaint (Element 1[d] of the '054 Patent and Element 1[c] of the '158 Patent). (Dkt. No. 18 at 5-7; Dkt. No. 1-1 at 38, 46.) The Court need not address this argument, because the Complaint fails even if Plaintiff adequately pled the "camera" theory.

***

Plaintiff's reliance on *Disc Disease Sols. Inc*, 888 F.3d at 1260 is unpersuasive. Implausible claim construction or allegations inconsistent with infringement represent exceptions to that standard. *See Fiat Chrysler*, 884 F.3d at 1141-42; *Bot M8 LLC*, 4 F.4th at 1354; *see also Regents of Univ. of Michigan v. Leica Microsystems Inc.*, No. 19-CV-07470 LHK, 2020 WL 2084891, at *8 (N.D. Cal. Apr. 30, 2020) (recognizing a "narrow" exception permitting dismissal when "an infringement theory rests on an implausible claim construction" but denying 12(b)(6) motion to resolve noninfringement after claim construction).

In sum, Plaintiff's claim charts prove too much. Plaintiff either pleads an implausible construction ("people" are "wireless devices") or a potentially plausible construction ("cameras" are "wireless devices") inconsistent with infringement. As in *Bot M8 LLC*, Plaintiff "pleaded itself out of court" with its detailed claim charts. *See* 4 F.4th at 1354. Therefore, the Court grants Verkada's motion to dismiss Plaintiff's claim of direct, literal infringement.

### B.      Plaintiff Fails to Plausibly Allege Infringement Under the Doctrine of Equivalents.

"[A] product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997) (quotation marks and citation omitted). Equivalence "requires a showing that the difference between the claimed invention and the accused product or method was insubstantial or that the accused product or method performs the substantially same function in substantially the same way with substantially the same result as each claim limitation of the patented product or method." *AquaTex Indus., Inc. v. Techniche Sols.*, 479 F.3d 1320, 1326 (Fed. Cir. 2007). In *Nalco Co.*, for example, the plaintiff overcame a 12(b)(6) motion by identifying the step that the Accused Product infringed under the doctrine of equivalents and explaining how it was equivalent. 883 F.3d at 1354.

Plaintiff provides no such explanation here. Instead, Plaintiff makes only a conclusory statement that Verkada infringes "literally and/or under the doctrine of equivalents." (Dkt. No. 1-

United States District Court
Northern District of California

1 at 5-6.) That conclusory allegation is insufficient when, as here, the literal infringement allegations rely on implausible claim construction or a claim construction that is fatally inconsistent with infringement. *See*, *e.g.*, *Ottah v. BMW*, 230 F. Supp. 3d 192, 196-97 (S.D.N.Y. 2017), *aff'd sub nom. Ottah v. Fiat Chrysler*, 884 F.3d 1135 (Fed. Cir. 2018) (holding the claim term "book" could not plausibly be construed to mean "camera," even under the doctrine of equivalents); *Bot M8 LLC v. Sony Corp. of Am.*, No. 19-CV-07027 WHA, 2020 WL 418938, at *2-3 (N.D. Cal. Jan. 27, 2020), *aff'd in part*, *rev'd in part on other grounds*, 4 F.4th 1342 (Fed. Cir. 2021) (granting motion to dismiss because complaint pled facts inconsistent with infringement despite pleading literal infringement and infringement under doctrine of equivalents). Put differently, because Plaintiff's literal infringement allegation is implausible, a conclusory reference to the doctrine of equivalents is insufficient to make the direct infringement claim plausible.

Thus, the Court grants Verkada's motion to dismiss Plaintiff's claim of direct infringement under the doctrine of equivalents.

## II.     Indirect Infringement

Verkada argues the Complaint fails to plead facts sufficient to constitute a pre-suit inducement claim. (Dkt. No. 12 at 14-15.) They argue the Complaint does not allege "knowledge of the patents in suit and knowledge of infringement." (Dkt. No. 12 at 15.) Plaintiff provides no response. (Dkt. No. 17.) The Court agrees with Verkada.

Under 35 U.S.C. § 271(b), "[w]hoever actively induces infringement of a patent shall be liable as an infringer." Induced infringement requires "knowledge that the induced acts constitute patent infringement," including "knowledge of the existence of the patent that is infringed." *Glob.-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 765-66 (2011); *see also Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 824 F.3d 1344 (Fed. Cir. 2016) (holding proof of induced infringement requires not "only knowledge of the patent" but also "proof the defendant knew the [induced] acts were infringing.") (quotation marks and citation omitted). Courts may infer knowledge of infringement "from circumstantial evidence." *Warsaw Orthopedic, Inc.*, 824 F.3d at

1347.  Further, "liability for inducement must be predicated on direct infringement."  *Limelight Networks, Inc. v. Akamai Techs., Inc.*, 572 U.S. 915, 920-21 (2014).

Plaintiff merely alleges that Verkada induced infringement.  (Dkt. No. 1 at 4.)  The Complaint does not include the requisite allegations, including that Verkada had knowledge of the Patents, that Verkada knew their Product infringed the Patents, and that Verkada's actions led another to directly infringe.  Further, the Complaint must state a plausible claim for direct infringement to plausibly state a claim for indirect infringement.  *See Limelight Networks, Inc.*, 572 U.S. at 920-21.

The Court grants Verkada's motion because Plaintiffs fails to plead facts sufficient to permit the Court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## CONCLUSION

Drawing all reasonable inferences in Plaintiff's favor, Plaintiff does not plead factual content sufficient to draw a reasonable inference that Verkada is liable for direct or indirect patent infringement.  Verkada's motion to dismiss is therefore GRANTED. Plaintiff is given 20 days leave to file an amended complaint, provided Plaintiff can amend consistent with Plaintiff counsel's obligations under Federal Rule of Civil Procedure 11.

This Order disposes of Docket No. 12.

**IT IS SO ORDERED.**

Dated: February 7, 2023

JACQUELINE SCOTT CORLEY
United States District Judge